**Ex parte Alice GENTRY.**

**No. 67363.**

Court of Criminal Appeals of Texas, Panel No. 2.

May 6, 1981.

Richard L. Griffin, Denton, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, Larry Moore and Lee A. Joyner, Jr., Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

This is a habeas corpus proceeding in which petitioner sought a reduction in the amount of bail, set at $10,000 upon presentment of indictment charging her with sexual abuse of a child and incest.[1] After a hearing held March 4, 1981 the habeas court declined to modify the bail,[2] and petitioner gave notice of appeal. The record was filed by our Clerk March 24, 1981 and submitted on briefs April 29, 1981. Now petitioner prays alternatively for an order releasing her on a personal bond or reducing bail to

$1,000 or less. For its part, the State, consistent with its position below, points to the nature of the alleged offenses and stresses "a strong community interest in sexual related offenses . . . where incestuous activity is alleged."[3] The competing contentions are better assayed when placed in context, and to that end we now turn.

Our petitioner is a thirty four year old divorcee who has lived in Fort Worth twenty seven years. She resides in her own home, making monthly mortgage payments of $193.37, and it is her principal asset.[4] She is, or was at the time of her arrest, employed by a major corporation, earning $3.50 per hour; then she was selfsupporting, anticipating her return to work if not terminated on account of a lengthy absence by confinement. She is a church member characterized by her pastor in his testimony as "faithful," having been acquainted with her for "better than three years." Indeed, at one point in time she lived next door to the church. Without any challenge from the State, petitioner testified that she had never been in trouble, never been arrested and had "no kind of record whatsoever." She promised the court to appear at all proceedings: even "[i]f I had to walk I'll be there."

Petitioner is familiar with civil proceedings. April 27, 1979, the District Attorney, representing the Department of Human Resources, filed suit to terminate her parental rights with respect to her four minor children.[5] Contemporaneously, they were taken from her custody and control, and remain wards of the Department presently. Represented by an attorney provided by a

1. The offenses are apparently alleged in a single indictment under one cause number and seem to arise from one transaction; the alleged victim is one of six children, a girl then twelve years of age. "Then" was December 6, *1978.* The indictment—there is no mention of an underlying complaint—was returned February 24, *1981.* Petitioner was arrested at her place of employment February 26, 1981, and has remained confined in lieu of bond.

2. In denying relief, the habeas court made no supportive findings—but, of course, none is required by law, illuminating though they may be.

3. More specifically, it is charged that petitioner engaged in deviate sexual intercourse by placing her mouth in contact with the genitals of her daughter, whom we will call Vee.

4. Petitioner had no cash on hand, but expected a paycheck for two weeks work on March 6, 1981; she does not own an automobile.

5. Another child is married and still another was "adopted out" when he was eight years old, but at what time is not revealed in the record.

legal aid association, petitioner advanced a counterclaim of some nature in the litigation. Fighting to regain her children and concomitant parental rights, petitioner has made her appearance at every proceeding in the case, as well as during deposition-taking unless it was done away from Fort Worth and her attorney advised her presence was not required. The civil litigation continues unresolved.[6]

From cross-examination of petitioner by the State we learn:

"Q: You have indicated that you don't have funds to pay a bondsman to make this bond. How much would have had to pay a bondsman to make this bond?

A: $1,000.

Q: Had you talked to any bondsmen?

A: Yes, sir.

\* \* \* \* \* \*

Q: ... [D]o you have funds to pay a bondsman ... for any bond should the Judge decide to lower this bond? Could you afford to make a ... bond at all?

A: I just have to trust God to send it to me.

\* \* \* \* \* \*

Q: ... [R]egardless of what the amount of the bond is, you're saying that you couldn't make it period?

A: Not personally, but I feel that I have talked with my pastor ... and he said the church would help me.

\* \* \* \* \* \*

Q: How much money could they come up with?

A: You would have to talk to my pastor about that, sir, 'cause I don't know."

6. During settlement negotiations the Department offered to restore Vee and another child to her in exchange for relinquishment of parental rights in two others. Vee currently resides in a foster home and has for about two years, since shortly after the Department took custody of her.

7. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

Reverend R. L. Macklin was the next witness; he testified that the congregation could raise two hundred dollars, but not more than three hundred.

The State did not present any evidence and objected to any statement by counsel for petitioner with respect to "no strength to the State's case" against her. All we know about it from the record is what the indictment alleges happened almost two and a half years ago.

█ In these matters the Court examines the record with an eye to the statutory rules for fixing bail, Article 17.15, V.A.C. C.P., and to those policy considerations similarly scattered throughout Chapter Seventeen and elsewhere. What is in this record, we have stated—there is no more. From it we simply are unable rationally to comprehend why this woman should remain confined.

The State argues that bail was set in the amount of ten thousand dollars to reflect its "concern" and that of the community "with sexual offenses such as the one ... [petitioner] ... is *charged* with."[7] But the taint of a criminal accusation, or the blight of the civil litigation, is not enough to obliterate—need it be said?–the presumption of innocence. So deeply embedded in Anglo-Saxon doctrine, the necessity of writing it in did not occur to the Framers of our Constitutions, but by our Legislature it is stated and restated at least three times in the Code of Criminal Procedure, *viz*: Articles 2.03,[8] 11.43[9] and 38.03,[10] V.A.C.C.P. The mere accusation proves nothing, and amounts to no more than a pleading basing criminal litigation against this citizen.

8. "It is the duty of the trial court, the attorney representing the accused ... [and] the attorney representing the state ... not to impair the presumption of innocence..."

9. "No presumption of guilt arises from the mere fact that a criminal accusation has been made before a competent authority."

10. "The defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt..."

That petitioner "*may* be convicted" [emphasis in original] is seen by the State as "sufficient incentive" for setting bail so high in this matter. If by that the State is suggesting that petitioner might be tempted to abscond because she has been charged, we are not impressed. Rather, she has stood her ground for more than two years, counterclaiming against the Department and the District Attorney, to regain and retain custody of her four minor children. We regard earning her parental rights an incentive to remain much greater than any thought to depart the jurisdiction and surely lose them.

■ The amount of bail set in a criminal proceeding must be high enough to provide a reasonable assurance that the accused will appear as required, but the power to fix that amount is not to be used so as to make it an instrument of oppression. Though ability or inability to make bail does not in and of itself control that amount, that factor must be considered along with other statutory elements. *Ex parte Keller*, 595 S.W.2d 531, 533 (Tex.Cr.App.1980) and cases cited. We are completely satisfied that petitioner discharged her burden of showing her entitlement to the relief we are about to grant.

The prayer for reduction of the amount of bail is granted; the amount of bail is fixed at $2,500; petitioner is ordered released on the security of a personal bond in the amount fixed.

It is so ordered.