# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-01-00319-CR

---

## Ex parte Larry McDonald

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 9010181, HONORABLE FRANK W. BRYAN, JR., JUDGE PRESIDING

---

Larry McDonald is confined in the Travis County Jail awaiting trial on an indictment for burglary of a habitation. McDonald's bail is $400,000. McDonald petitioned for a writ of habeas corpus, complaining that the amount of bail is excessive and asking that it be reduced to $10,000. The writ issued and after a hearing, relief was denied.

The primary purpose of bail is to secure the presence of the defendant. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). The setting of bail is committed to the discretion of the trial court or magistrate, but the exercise of this discretion is governed by the constitution and statutes. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West Supp. 2001). Bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, but the power to require bail is not to be used so as to make it an instrument of oppression. *Id*. art. 17.15(1), (2). The nature of the offense and the circumstances under which it was committed are factors to be considered in setting bail, as is the future safety of the community and the victim of the alleged offense. *Id*. art. 17.15(3), (5). The defendant's ability to make bail also must be considered, but is not of itself controlling. *Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex.

Crim. App. 1981); art. 17.15(4). In determining the likelihood of the defendant complying with the conditions of bail, consideration also may be given to such factors as the defendant's ties to the community, cooperation with the police, and record of appearances in the past. *See Ex parte Williams*, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981); *Gentry*, 615 S.W.2d at 231; *Ex parte Parish*, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980); *Ex parte Keller*, 595 S.W.2d 531, 533 (Tex. Crim. App. 1980).

The burden of proof is on the applicant to prove that bail is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). We review the trial court's ruling for an abuse of discretion. *Id*. at 850.

Four of McDonald's friends and neighbors testified at the hearing. They stated that he was a good neighbor, a good father to his two sons, and active in volunteer youth organizations. Each expressed confidence that McDonald would appear for trial if released on bond. Only one of these witnesses, however, was aware of McDonald's previous criminal record. Each had only a general idea of McDonald's employment and source of income; two thought he worked for a vending machine company, while two others believed he was self-employed as a bodyguard. None of these witnesses was familiar with McDonald's financial situation. One witness testified that the houses in McDonald's neighborhood were valued at from $105,000 to $115,000.

McDonald's daughter, Constance McDonald, and his brother, Ray McDonald, also testified. Like McDonald's friends, they knew very little about his personal life or affairs. Neither was certain what McDonald did for a living; Constance believed he worked with vending machines, while Ray said he did "security or something."

2

McDonald testified that his only asset was his house, the value of which he did not disclose. He acknowledged previous burglary convictions in Oklahoma. He had also been arrested for assault with family violence, but that charge had been dropped. At the time of the hearing McDonald was also awaiting trial in Dallas on an accusation of evading arrest. McDonald testified that he worked as a bodyguard, but did not name any of his clients. He also claimed to work at a nightclub in an unspecified capacity. He said his gross income in 2000 was $22,000. McDonald admitted that he had not filed income tax returns for at least ten years. He claimed that the Internal Revenue Service actually owed him money, but did not say how much. McDonald said he could not afford a $400,000 bond, but believed he could afford a bond in the $25,000 range.

The State's only witness was Austin Police Officer Kevin Bartles. Bartles testified that there had been a series of approximately one hundred burglaries committed in area of northwest Austin over the last ten years. These burglaries had a number of common characteristics that need not be detailed here and were believed to have been committed by the same person. McDonald was arrested at 3:30 a.m. on February 24, 2001, when he entered the open garage of a house that was being watched by the police. McDonald was wearing gloves and a dark-colored, hooded sweatshirt of the type the suspect burglar was known to wear, was carrying a small flashlight, and had a flat-head screwdriver in his sock. During a later search of McDonald's house, police found dozens of flat-head screwdrivers, a number of flashlights, and other hooded sweatshirts. Watches and jewelry were also found, but these items had not been linked to any of the subject burglaries. Bartles said that the distinctive burglaries stopped following McDonald's arrest.

The court also took judicial notice of the arrest-warrant affidavit prepared by Officer Bartles. The affidavit stated that during the search of McDonald's house, documents were found

indicating that he had been fined $10,000 per year for failing to file income tax returns in the years 1990 through 1995. McDonald's former wife told police that he never worked and had not paid income taxes for the past twenty years. She also stated that McDonald made lump-sum payments of $10,400, $2500, and $4300 on three different occasions to prevent the lender from foreclosing on his house.

The district court cited several considerations underlying its decision to leave McDonald's bail at $400,000: (1) his character witnesses knew very little about him; (2) the vague and conflicting testimony regarding his employment; (3) his ability to make large cash payments without any documented source of income; (4) his previous burglary convictions; and (5) the evading arrest incident in Dallas.

McDonald argues that the evidence shows him to have extensive ties to Austin in the form of ten years of residence, home ownership, supportive friends, and community activities. There is no evidence that McDonald ever failed to make a court appearance. McDonald notes that whatever the State may suspect about his criminal activities, he is accused of only a single burglary. Burglary is a nonviolent offense and there is no evidence of any victim who would be physically endangered by McDonald's release from custody. McDonald asserts that a $400,000 bail exceeds that routinely set in more serious cases and is grossly disproportionate to the offense of which he is accused. He urges that on this record, bail is being used by the district court as an instrument of oppression.

The State responds that the evidence shows McDonald to be a professional burglar. The State notes that McDonald was arrested for the charged burglary after he was released on bond in the Dallas evading arrest case, and urges that McDonald would pose a threat to continue his

criminal activities should he be released. The State also argues that given the vague testimony regarding McDonald's employment and financial situation, he has failed to demonstrate that the present bail is beyond his ability to pay.

We agree with McDonald that $400,000 is an unusually large bail for a person accused of a burglary. We also agree that the evidence regarding McDonald's ties to the community tends to support a lesser bail. On the other hand, McDonald offered no meaningful evidence regarding his ability to make bail. McDonald owns a house, but did not testify to its value or the amount of his equity in it. McDonald does not appear to have regular employment and claimed to have no assets other than his house, yet he has been able to make large cash payments when necessary. Considering the record as a whole, we conclude that the court abused his discretion by refusing to set bail at less than $400,000. The court's order denying relief is reversed. The relief sought is granted to the extent that McDonald's bail is ordered reduced to $100,000.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Remanded; Bail Ordered Set

Filed: October 18, 2001

Do Not Publish