TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00319-CR







Ex parte Larry McDonald







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT


NO. 9010181, HONORABLE FRANK W. BRYAN, JR., JUDGE PRESIDING






Larry McDonald is confined in the Travis County Jail awaiting trial on an
indictment for burglary of a habitation. McDonald's bail is $400,000. McDonald petitioned for
a writ of habeas corpus, complaining that the amount of bail is excessive and asking that it be
reduced to $10,000. The writ issued and after a hearing, relief was denied.

The primary purpose of bail is to secure the presence of the defendant. Ex parte
Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). The setting of bail is committed to the
discretion of the trial court or magistrate, but the exercise of this discretion is governed by the
constitution and statutes. See Tex. Code Crim. Proc. Ann. art. 17.15 (West Supp. 2001). Bail
should be sufficiently high to give reasonable assurance that the undertaking will be complied
with, but the power to require bail is not to be used so as to make it an instrument of oppression. 
Id. art. 17.15(1), (2). The nature of the offense and the circumstances under which it was
committed are factors to be considered in setting bail, as is the future safety of the community and
the victim of the alleged offense. Id. art. 17.15(3), (5). The defendant's ability to make bail also
must be considered, but is not of itself controlling. Ex parte Gentry, 615 S.W.2d 228, 231 (Tex.
Crim. App. 1981); art. 17.15(4). In determining the likelihood of the defendant complying with
the conditions of bail, consideration also may be given to such factors as the defendant's ties to
the community, cooperation with the police, and record of appearances in the past. See Ex parte
Williams, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981); Gentry, 615 S.W.2d at 231; Ex parte
Parish, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980); Ex parte Keller, 595 S.W.2d 531, 533
(Tex. Crim. App. 1980). 

The burden of proof is on the applicant to prove that bail is excessive. Ex parte
Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). We review the trial court's ruling for an
abuse of discretion. Id. at 850.

Four of McDonald's friends and neighbors testified at the hearing. They stated that
he was a good neighbor, a good father to his two sons, and active in volunteer youth organizations. 
Each expressed confidence that McDonald would appear for trial if released on bond. Only one of
these witnesses, however, was aware of McDonald's previous criminal record. Each had only a
general idea of McDonald's employment and source of income; two thought he worked for a vending
machine company, while two others believed he was self-employed as a bodyguard. None of these
witnesses was familiar with McDonald's financial situation. One witness testified that the houses
in McDonald's neighborhood were valued at from $105,000 to $115,000.

McDonald's daughter, Constance McDonald, and his brother, Ray McDonald, also
testified. Like McDonald's friends, they knew very little about his personal life or affairs. Neither
was certain what McDonald did for a living; Constance believed he worked with vending machines,
while Ray said he did "security or something."

McDonald testified that his only asset was his house, the value of which he did not
disclose. He acknowledged previous burglary convictions in Oklahoma. He had also been arrested
for assault with family violence, but that charge had been dropped. At the time of the hearing
McDonald was also awaiting trial in Dallas on an accusation of evading arrest. McDonald testified
that he worked as a bodyguard, but did not name any of his clients. He also claimed to work at a
nightclub in an unspecified capacity. He said his gross income in 2000 was $22,000. McDonald
admitted that he had not filed income tax returns for at least ten years. He claimed that the Internal
Revenue Service actually owed him money, but did not say how much. McDonald said he could not
afford a $400,000 bond, but believed he could afford a bond in the $25,000 range. 

The State's only witness was Austin Police Officer Kevin Bartles. Bartles testified
that there had been a series of approximately one hundred burglaries committed in area of northwest
Austin over the last ten years. These burglaries had a number of common characteristics that need
not be detailed here and were believed to have been committed by the same person. McDonald was
arrested at 3:30 a.m. on February 24, 2001, when he entered the open garage of a house that was
being watched by the police. McDonald was wearing gloves and a dark-colored, hooded sweatshirt
of the type the suspect burglar was known to wear, was carrying a small flashlight, and had a flat-head screwdriver in his sock. During a later search of McDonald's house, police found dozens of
flat-head screwdrivers, a number of flashlights, and other hooded sweatshirts. Watches and jewelry
were also found, but these items had not been linked to any of the subject burglaries. Bartles said
that the distinctive burglaries stopped following McDonald's arrest.

The court also took judicial notice of the arrest-warrant affidavit prepared by Officer
Bartles. The affidavit stated that during the search of McDonald's house, documents were found
indicating that he had been fined $10,000 per year for failing to file income tax returns in the years
1990 through 1995. McDonald's former wife told police that he never worked and had not paid
income taxes for the past twenty years. She also stated that McDonald made lump-sum payments
of $10,400, $2500, and $4300 on three different occasions to prevent the lender from foreclosing on
his house.

The district court cited several considerations underlying its decision to leave
McDonald's bail at $400,000: (1) his character witnesses knew very little about him; (2) the vague
and conflicting testimony regarding his employment; (3) his ability to make large cash payments
without any documented source of income; (4) his previous burglary convictions; and (5) the evading
arrest incident in Dallas.

McDonald argues that the evidence shows him to have extensive ties to Austin in the
form of ten years of residence, home ownership, supportive friends, and community activities. There
is no evidence that McDonald ever failed to make a court appearance. McDonald notes that
whatever the State may suspect about his criminal activities, he is accused of only a single burglary. 
Burglary is a nonviolent offense and there is no evidence of any victim who would be physically
endangered by McDonald's release from custody. McDonald asserts that a $400,000 bail exceeds
that routinely set in more serious cases and is grossly disproportionate to the offense of which he is
accused. He urges that on this record, bail is being used by the district court as an instrument of
oppression.

The State responds that the evidence shows McDonald to be a professional burglar. 
The State notes that McDonald was arrested for the charged burglary after he was released on bond
in the Dallas evading arrest case, and urges that McDonald would pose a threat to continue his
criminal activities should he be released. The State also argues that given the vague testimony
regarding McDonald's employment and financial situation, he has failed to demonstrate that the
present bail is beyond his ability to pay.

We agree with McDonald that $400,000 is an unusually large bail for a person
accused of a burglary. We also agree that the evidence regarding McDonald's ties to the community
tends to support a lesser bail. On the other hand, McDonald offered no meaningful evidence
regarding his ability to make bail. McDonald owns a house, but did not testify to its value or the
amount of his equity in it. McDonald does not appear to have regular employment and claimed to
have no assets other than his house, yet he has been able to make large cash payments when
necessary. Considering the record as a whole, we conclude that the court abused his discretion by
refusing to set bail at less than $400,000. The court's order denying relief is reversed. The relief
sought is granted to the extent that McDonald's bail is ordered reduced to $100,000.



 

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Remanded; Bail Ordered Set

Filed: October 18, 2001

Do Not Publish