# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00404-CR

## Ex parte Donald Chachere

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. GV100461, HONORABLE FRANK W. BRYAN JR., JUDGE PRESIDING

Donald Chachere is confined while awaiting trial on an indictment for solicitation of capital murder. His bail is $700,000. He petitioned for a writ of habeas corpus, complaining that the amount of bail is excessive and asking it be reduced or, alternatively, that he be released on personal bond. The writ issued and after a hearing, relief was denied.

Chachere first argues that he must be released under the terms of article 17.151. Tex. Code Crim. Proc. Ann. art. 17.151, § 1 (West Supp. 2002). This statute provides that a person detained pending trial of a felony accusation must be released, either on personal bond or by reducing the amount of bail required, if the State is not ready for trial within ninety days after detention begins. *Id.*, § 1(1).

The record does not establish the date of Chachere's arrest. We will assume that his detention began sometime between March 15, 2001, when the arrest warrant was issued, and March 28, when the writ application was filed. On June 15, the prosecutor told the court that the State was

ready for trial. Under the circumstances, this was a prima facie showing of the State's readiness within the prescribed ninety days and shifted to Chachere the burden to show otherwise. *Jones v. State*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991); *Ex parte Brosky*, 863 S.W.2d 775, 778 (Tex. App.—Fort Worth 1993, no pet.).

Chachere cites two facts as rebutting the State's prima facie showing of readiness. First, he notes that he was reindicted on June 8, only one week before the State's announcement. The purpose of the reindictment was to correct a typographical error regarding the date of the alleged offense. The State may be ready for trial even if the indictment is defective. *Brosky*, 863 S.W.2d at 778. Chachere's reindictment did not rebut the prima facie showing of readiness.

Second, Chachere points out that certain audio recordings of telephone conversations between himself and an undercover agent of the State were, at the time of the writ hearings, being "enhanced" because portions were inaudible. These recordings were thus unavailable for use by the State at that time and could not immediately be made available to the defense pursuant to discovery. The prosecutor told the court, however, that "the tapes that I believe that are necessary [for trial] have been transcribed." In any event, the agent was available to testify to these conversations with Chachere. *See Ex parte Watson*, 940 S.W.2d 733, 736 (Tex. App.—Texarkana 1997, no pet.). That the defense had not completed discovery did not rebut the State's showing of readiness.

The record does not demonstrate appellant's entitlement to release pursuant to article 17.151. Point of error two is overruled. We turn to Chachere's first point, by which he argues that the amount of bail is excessive.

The primary purpose of bail is to secure the presence of the defendant. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). The setting of bail is committed to the discretion of the trial court or magistrate, but the exercise of this discretion is governed by the constitution and statutes. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West Supp. 2002). Bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, but the power to require bail is not to be used so as to make it an instrument of oppression. *Id*. art. 17.15(1), (2). The nature of the offense and the circumstances under which it was committed are factors to be considered in setting bail, as is the future safety of the community and the victim of the alleged offense. *Id*. art. 17.15(3), (5). The defendant's ability to make bail also must be considered, but is not of itself controlling. Id. art. 17.15(4); Ex *parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981). In determining the likelihood of the defendant complying with the conditions of bail, consideration also may be given to such factors as the defendant's ties to the community, cooperation with the police, and record of appearances in the past. *See Ex parte Williams*, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981); *Gentry*, 615 S.W.2d at 231; *Ex parte Parish*, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980); *Ex parte Keller*, 595 S.W.2d 531, 533 (Tex. Crim. App. 1980).

The burden of proof is on the applicant to prove that bail is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). We review the trial court's ruling for an abuse of discretion. *Id*. at 850.

The State's primary witness was Texas Ranger Salvador Abreo. According to Abreo, Chachere contacted Georgetown private detective Beverly McKinney in the fall of 2000 and asked her if she knew someone willing to kill his former wife, Marla Chachere. McKinney contacted the

3

police, and in November 2000 Abreo agreed to pose as the hitman. At a meeting in December 2000, McKinney told Chachere she knew someone willing to commit the murder for $3000 and gave him Abreo's cell phone number. Chachere called Abreo several times in early January 2001. Although Chachere used what Abreo called "coded language," the officer understood Chachere to say that he wanted his former wife, and perhaps her boyfriend, murdered. Abreo and Chachere agreed to meet in Austin on January 13.

At the January meeting, Chachere told Abreo he was from Houston and explained that he was tired of his former wife and of paying child support. Chachere gave Abreo the names of his former wife and her boyfriend and described the neighborhood in which they lived in San Antonio. He indicated that the best time to commit the murder would be spring break, when Chachere would have custody of his daughter. They discussed price, and Chachere said he would pay with his income tax refund. Abreo gave Chachere a list of items that he would need, such as photographs and maps. It was agreed that they would meet again in about a week.[1]

Chachere called Abreo several more times. Although Chachere never indicated a desire to back out of the deal, the two men never again met in person. As spring break neared, the police became concerned that Chachere might have made other arrangements for the killing. They moved Marla Chachere to a hotel and procured the warrant for Chachere's arrest.

---

[1] This meeting, like the December meeting between Chachere and McKinney, was videotaped. The videotapes were admitted in evidence at the hearing and viewed by the district court before ruling.

Marla Chachere testified that she and her former husband had a "long, nasty divorce" in 1999. She said that there had been "physical confrontations" during their marriage, but that the police had never been called. She said that she began to fear Chachere after being told by the police that he was planning to hire a man to kill her. She also described an incident in which Chachere gave Houston police information that resulted in her arrest on drug charges that were subsequently dismissed. She acknowledged that Chachere had made his child support payments and had complied with all court orders regarding custody and visitation.

Chachere's only witness was his brother. He testified that Chachere is a longtime resident of Houston, where his parents also live, and has custody of his son from a previous marriage. He said Chachere has held the same job for fifteen years, but did not name his employer, describe the nature of his work, or state his salary. According to Chachere's brother, Chachere does not own a home or a vehicle, and has no funds. His family hired Chachere's attorney and would have to pay for any bond. At most, the family could afford a $200,000 bond.

**Nature and circumstances of offense.**

The return of an indictment establishes as a matter of law that there is probable cause to believe that Chachere is guilty of soliciting capital murder. *Ex parte Plumb*, 595 S.W.2d 544, 545 (Tex. Crim. App. 1980); *Ex parte Welch*, 729 S.W.2d 306, 309 (Tex. App.—Dallas 1987, no pet.). Soliciting a capital offense is a first degree felony. Tex. Pen. Code Ann. § 15.03(d)(1) (West 1994). Chachere argues that the evidence at the hearing establishes that he is not guilty of the offense. This argument is not persuasive because the State did not necessarily present all its evidence at the writ

5

hearing. Chachere's argument also depends on an evaluation of the weight and credibility of the evidence. That task is one for the trier of fact at trial. There is nothing in the record before us that establishes that Chachere could not be guilty of the offense alleged, or that the likelihood of conviction is unusually low.

### Amount of bail and ability to make bail.

Appellant refers us to a 1993 opinion reducing pretrial bail in a capital murder case from $1,000,000 to $75,000. *Ex parte McDonald*, 852 S.W.2d 730, 736 (Tex. App.—San Antonio 1993, no pet.). In that opinion, the court reviewed the reported decisions in capital cases and found none approving bail exceeding $100,000. *Id*. at 733. *McDonald* is almost nine years old. The same court more recently upheld an order setting pretrial bail in a capital case at $750,000. *Ex parte Chavfull*, 945 S.W.2d 183, 187 (Tex. App.—San Antonio 1997, no pet.). Ultimately, the appropriate amount of bail must be determined on a case-by-case basis. Other opinions are instructive, but there is no amount of bail that is per se excessive. We acknowledge, however, that $700,000 is a particularly high bail, even for a first degree felony.

Chachere's brother testified that the family could not afford bail in the present amount. The record is virtually silent, however, about Chachere's personal ability to make bail. Chachere's brother testified that Chachere has no money "that I am aware of." Chachere was said to be employed, but his salary was not disclosed. It was said that Chachere does not own a home, but the nature of his residence, its cost, and its precise location are not in evidence. There was testimony that Chachere does not own a car, but he traveled by car to meetings in Schulenburg and Austin, and he

6

regularly exchanged custody of his daughter with his former wife in San Antonio. The record is silent with respect to financial assets that Chachere might or might not own. There is no evidence that Chachere has attempted to borrow money to make bail.

### Safety of victim.

A grand jury has determined that there is credible evidence that Chachere sought to hire a killer to murder his former wife. Marla Chachere testified to "physical confrontations" with Chachere during their marriage. She also testified that she fears appellant might harm her or her daughter based on what she has been told by the police regarding the alleged offense. On the other hand, Chachere points out that the court is authorized to impose reasonable bond conditions for the purpose of victim or community safety. *See* Tex. Code Crim. Proc. Ann. art. 17.40 (West Supp. 2002).

### Other factors.

There was testimony that Chachere is a longtime resident of Houston, that his parents and a sister also live there, and that he has custody of a son. There was also testimony that Chachere has held the same job for fifteen years, but neither the nature of this employment nor the name of his employer is in evidence. There is no evidence that Chachere has a previous criminal record or that he has ever failed to comply with the conditions of a bond. Marla Chachere testified that he complied with court orders with respect to child support and custody.

Balancing all the relevant facts before us, we conclude that the district court abused its discretion by refusing to set bail at less than $700,000. The court's order denying relief is reversed, and Chachere's bail is ordered reduced to $250,000.

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Reversed and Remanded; Bail Ordered Set

Filed:   January 25, 2002

Do Not Publish