TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00590-CR







Ex parte Christopher Lee Murray







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 12900, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



Christopher Lee Murray is confined while awaiting trial on an indictment
accusing him of capital murder and injury to a child. Murray applied for a writ of habeas corpus
complaining that the bail set in this case, $1,000,000, is excessive. The writ issued, and after a
hearing, the district court denied relief. In a single point of error, Murray contends that the bail is
unreasonably high and the trial court erred by failing to reduce it. We will reverse and remand the
cause to the trial court.

The Texas Constitution guarantees that "[a]ll prisoners shall be bailable by sufficient
sureties, unless for capital offenses, when the proof is evident." Tex. Const. art. I, § 11; see
Tex. Code Crim. Proc. Ann. art. 1.07 (West 2005). The State does not claim that the proof is evident
in this case. Therefore, Murray is entitled to reasonable bail, that is, bail that is not excessive. U.S.
Const. amend VIII; Tex. Const. art. I, § 13; Tex. Code Crim. Proc. Ann. art. 1.09 (West 2005).

The setting of bail is committed to the discretion of the trial court, but the exercise
of that discretion is governed by the constitution and by statute. Tex. Code Crim. Proc. Ann. art.
17.15 (West 2005). Bail should be sufficiently high to give reasonable assurance that
the undertaking will be complied with, but not so high as to make it an instrument of oppression. 
Id. art. 17.15(1), (2); see Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977) (primary
purpose of bail is to secure defendant's presence for trial). The nature of the offense and
the circumstances under which it was committed are factors to be considered, as is the future
safety of the community and the victim. Tex. Code Crim. Proc. Ann. art. 17.15(3), (5). The
defendant's ability to pay may also be considered, but it is not in itself controlling. Id. art. 17.15(4);
Ex parte Gentry, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981). In applying these guidelines, the
trial court may give consideration to such evidentiary matters as the defendant's work record, ties
to the community, previous criminal record, and record of appearances in the past. Ex parte
Williams, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981); Gentry, 615 S.W.2d at 231; Ex parte
Parish, 594 S.W.2d 872, 873 (Tex. Crim. App. 1980); Ex parte Keller, 595 S.W.2d 531, 533
(Tex. Crim. App. 1980).

The burden is on the accused to prove that bail is excessive. Ex parte Rubac,
611 S.W.2d 848, 849 (Tex. Crim. App. 1981). We review the trial court's ruling for an abuse of
discretion. Id. at 850.

The indictment contains two counts, each subdivided into two paragraphs. Count one
alleges that appellant intentionally caused the death of the deceased, who was younger than six years
of age, by inflicting blunt force trauma (paragraph one) and striking the body (paragraph two) in an
unknown manner. See Tex. Penal Code Ann. § 19.03(a)(8) (West Supp. 2007). Count two alleges
that appellant, in the same two ways, intentionally or knowingly caused serious bodily injury to the
deceased. See id. § 22.04(a)(1). The lead investigator, reading from the autopsy report, testified that
the deceased child, who was two years old, suffered fractures of the skull, several ribs, and a
vertebra, and had 120 or more contusions to his head, chest, abdomen, back, and extremities. There
was also a contusion of the pancreas, and lacerations of the liver and duodenum. No other evidence
was offered regarding the nature or circumstances of the alleged offense.

Murray's only witness was his aunt, Josie Marie Silva. She testified that Murray was
raised by her parents, Murray's maternal grandparents. She said that Murray had lived in Bastrop
County with her parents for one-and-a-half years, but her testimony was unclear as to when. Silva
said that if Murray were to be released on bond, he would live with her and her family in Harris
County, where she had found him work. One can infer from Silva's testimony that most of Murray's
extended family lives in Harris County.

Silva expressed the opinion that Murray is not a violent person, and she said that she
had never seen him lose his temper. Silva has three children ranging in age from sixteen months to
nine years, and she would not hesitate to leave them in Murray's care. During cross-examination,
Silva acknowledged that Murray had been arrested for assaulting her in 1997, but she said that she
had provoked the incident and that the charges had been dismissed.

Murray has two Harris County convictions for possession of marihuana and one for
burglary of a motor vehicle, the most recent of which was in 1998. At the time of his arrest in the
instant case, he had two outstanding traffic warrants. While testifying, the investigating officer
mentioned an offense report from 2006 regarding an alleged assault by Murray against the mother
of the deceased child, but no further details were offered.

Murray is represented by appointed counsel. Silva testified that Murray has no money
except for $3,000, which she raised by selling his car. She estimated that with the help of his family,
Murray could afford a $40,000 bond.

At the conclusion of the testimony, the State argued that the deceased's injuries
reflected an "explosion of anger" and urged the court to leave bail at $1,000,000 because Murray
represents a public safety risk. Defense counsel responded that the State had offered no evidence
that Murray committed any act of violence against the deceased and asked that bail be reduced to no
more than $50,000. The court explained its decision to leave bail at $1,000,000 as follows:


I feel that based on the seriousness of this offense and based upon the information
and evidence I received today that that bond is adequate and sufficient. You could
be no-bonded, you're not, so you have a bond, and I believe that it's one that if your
family members truly wish to band together and to help you that they would have the
ability to gather resources. I don't see that they've tried that yet and I'm not going
to disturb it. The bond stands.



Ability to pay

The factor on which the court placed greatest emphasis was Murray's ability to pay
or, more precisely, Murray's failure to show an unsuccessful effort to raise the funds necessary to
make bail in the existing amount. The evidence was undisputed, however, that Murray has only
$3,000. Silva testified that Murray's family could afford a bond of $40,000. There is no reason to
believe that Murray's family can afford, even collectively, a $1,000,000 bail bond.


Nature and circumstances of offense

The indictment establishes as a matter of law that there is probable cause to believe
that Murray is guilty of capital murder and injury to a child. See Ex parte Plumb, 595 S.W.2d 544,
545 (Tex. Crim. App. 1980). Physical abuse of an infant or young child is abhorrent conduct, and
the deceased in this case suffered massive injuries. We know nothing more, however, about the
circumstances of the alleged offense.


Community safety

As this Court has observed, there is a tension between article 17.15(5), which states
that the future safety of the victim and the community shall be considered in setting bail, and the
constitutional right to bail. Ex parte Ramirez, No. 03-99-00172-CR, 1999 Tex. App. LEXIS 4457,
at *9 (Tex. App.--Austin June 17, 1999, no pet.) (not designated for publication). A magistrate may
consider community safety as only one factor in determining a reasonable bail; if the magistrate
deliberately sets bail in an amount the accused cannot meet in order to assure his continued
incarceration and for no other reason, the accused is denied his constitutional right to reasonable bail. 
Id. at *10; see Ex parte Harris, 733 S.W.2d 712, 714 (Tex. App.--Austin 1987, no pet.).

The State points to the injuries suffered by the deceased as evidence of Murray's
propensity for violence and his potential danger to others. There is evidence that Murray was
arrested for assaulting Silva in 1997, but these charges were dismissed. Murray was reported to have
assaulted the mother of the deceased child in 2006, but there is no evidence that he was arrested or
charged. Murray has a criminal record, but only for nonviolent offenses.


Securing Murray's presence

The primary purpose of bail is to secure the presence of the defendant. Vasquez,
558 S.W.2d at 479. If Murray has a predisposition to flee, he has ample incentive to do so in this
case, where he faces a possible death sentence and a minimum punishment of life imprisonment if
convicted of capital murder. (1) The injury to a child offense also carries a possible life sentence. On
the other hand, except for the traffic tickets, there is no evidence that Murray ever failed to appear
in the other criminal cases in which he has been involved.

There is no evidence that Murray has any significant ties to Bastrop County. Murray
would live in Harris County with Silva should he be released on bail.


Bail in other recent cases

In Ex parte Simpson, the capital murder defendant was a juvenile certified for trial
as an adult. 77 S.W.3d 894, 895 (Tex. App.--Tyler 2002, no pet.). He was a life-long resident of
the county, but he was also a member of a violent street gang and had written letters from jail that
the court of appeals described as "incredibly shocking." Id. The court, having previously
determined that a $1,000,000 bail was excessive, affirmed the trial court's decision to set bail at
$600,000. Id. at 898.

In Cooley v. State, the defendant was accused in three indictments of soliciting the
capital murder of his business partner three times over a nineteen-month period. 232 S.W.3d 228,
230 (Tex. App.--Houston [1st Dist.] 2002, no pet.). Evidence was introduced at the habeas corpus
hearing to show that the defendant had paid six different people $24,000 to kill the intended victim. 
Id. at 237. The court of appeals affirmed the trial court's decision to set bail at $250,000 per
indictment, or a total of $750,000. Id. at 238.

In Ex parte Beard, the defendant was accused of the capital murder of her wealthy
husband. 92 S.W.3d 566, 567 (Tex. App.--Austin 2002, pet. ref'd). The evidence at the hearing
included the confession of the woman who shot the deceased pursuant to an alleged agreement with
the defendant. Id. at 569. The record showed that the defendant had inherited or received during
her marriage to the deceased valuable real estate and a substantial amount of cash. Id. at 569-70. 
This Court found that the trial court abused its discretion by setting bail at $8,000,000 and ordered
bail reduced to $500,000.

The State refers us to Ex parte Pulte, No. 02-03-00202-CR, 2003 Tex. App. LEXIS
9631 (Tex. App.--Fort Worth 2003, no pet.) (mem. op., not designated for publication). In this case,
the evidence showed that the defendant, three months after being released on bond pending his trial
for terroristic threat and stalking, purchased a handgun and twice attempted to hire someone to kill
the complainant in the stalking case. Id. at *5. The defendant was shown to have substantial assets
and had displayed "a disturbing lack of candor with the trial court." Id. The court of appeals
concluded that the trial court did not abuse its discretion by keeping the defendant's bail at
$1,000,000 for each solicitation of capital murder indictment. Id.

In Salazar v. State, the defendant was accused of the capital murder of her infant
daughter. No. 07-03-00545-CR, 2004 Tex. App. LEXIS 4620 (Tex. App.--Amarillo 2004,
pet. ref'd) (mem. op., not designated for publication). She was unemployed, and her family could
afford a bond of no more than $50,000. Id. at *4. The court of appeals concluded that a $600,000
bail, although high, was not an abuse of discretion given the nature of the offense and "the
alternatives presented to the trial court," which it did not describe. Id. at *4-5.

The court of criminal appeals once observed that it "has yet to condone a bail amount
even approaching seven figures, even in a capital case." Ludwig v. State, 812 S.W.2d 323, 324
(Tex. Crim. App. 1991) (plurality op.) (reducing bail in capital murder case from $1,000,000 to
$50,000). That was written seventeen years ago, and bail amounts have since tended to increase
generally, but seven-figure bail amounts are still rare. Few individuals can afford bail of $1,000,000
or more, and it is therefore difficult to justify bail in such an amount in light of the constitutional and
statutory admonitions that bail is not to be excessive or used as an instrument of oppression.

It is clear from the record that the $1,000,000 bail in this case is beyond Murray's
ability to pay. On the other hand, the crime of which Murray is accused is a very serious one, both
factually and in regard to the potential punishment. Murray has shown no real ties to the community.
Although Murray has no record of convictions for violent crimes, there is evidence that he has
assaulted two women, including the mother of the deceased child. Considering the evidence adduced
in the light most favorable to the court's ruling, and having measured that ruling against the criteria
informing the setting of pretrial bail, we believe that the trial court could reasonably conclude that
bail should be higher than the $40,000 to $50,000 sought by Murray, but that the court abused its
discretion by maintaining Murray's bail at $1,000,000. Therefore, we sustain Murray's point of
error, reverse the district court's order, and remand for further proceedings on the writ of habeas
corpus. Upon remand, the trial court shall enter an order setting bail in a reasonable amount
consistent with this opinion. Murray may appeal the court's new order in the same manner as he
appealed the order now before us.



 __________________________________________

 G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop;

 Dissenting Opinion by Justice Pemberton


Reversed and Remanded


Filed: March 20, 2008


Do Not Publish
1. There is no evidence as to whether the State intends to seek the death penalty.