# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-11-00163-CR

---

**Ex parte Patrick Muller**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 11-054-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Patrick Muller was arrested on warrants accusing him of aggravated sexual assault of a child (complainant one) and indecency with a child by contact (complainant two). A magistrate set bail at $500,000 for each offense. Muller applied for a writ of habeas corpus seeking a reduction of bail. Following a hearing on March 9, 2011, the district court reduced bail to $125,000 for each offense.

The indictment in this cause was filed the following day. The indictment alleges one count of aggravated sexual assault of a child (complainant one) and two counts of indecency with a child by contact (complainants one and two). On March 14, the district court made a docket entry setting bond in this cause at $250,000. In other words, Muller's bail on the pending three-count indictment is set at $250,000. In this appeal, Muller urges that his bail should be further reduced to $150,000.

With certain exceptions not applicable here, the Texas Constitution guarantees that "[a]ll prisoners shall be bailable by sufficient sureties." Tex. Const. art. I, § 11; *see* Tex. Code Crim. Proc. Ann. art. 1.07 (West 2005). Both the federal and state constitutions prohibit excessive bail. U.S. Const. amend. VIII; Tex. Const. art. I, § 13; *see* Tex. Code Crim. Proc. Ann. art. 1.09 (West 2005).

The code of criminal procedure commits the setting of bail to the discretion of the trial court or magistrate, but sets forth five rules that, together with the constitution, govern the exercise of that discretion. Tex. Code Crim. Proc. Ann. art. 17.15. (West 2005). Bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, but not so high as to make it an instrument of oppression. *Id*. art. 17.15(1), (2); *see Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977) (primary purpose of pretrial bail is to secure presence of defendant). The nature of the offense and the circumstances under which it was committed are factors to be considered in setting bail, as is the future safety of the community and the victim of the alleged offense. Tex. Code Crim. Proc. Ann. art. 17.15(3), (5). The defendant's ability to make bail also must be considered, but is not of itself controlling. *Id*. art. 17.15(4); *Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981). In applying article 17.15, consideration may be given to such evidentiary matters as the defendant's work record, ties to the community, previous criminal record, and record of appearances in the past. *See Ex parte Williams*, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981); *Gentry*, 615 S.W.2d at 231; *Ex parte Parish*, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980); *Ex parte Keller*, 595 S.W.2d 531, 533 (Tex. Crim. App. 1980).

The burden is on the accused to prove that bail is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). We review the trial court's ruling for an abuse of discretion. *Id*. at 850.

Javier Gonzalez testified that he was Muller's supervisor at the exterminating company where Muller had been employed for fifteen years. Gonzalez testified that Muller was a good employee and earned between $3000 and $3500 per month. Gonzalez was unsure whether Muller would be able to return to his job if released, saying that would be up to the company's "safety committee."

Gonzalez testified that he called Muller on December 24, 2010, to give him Christmas greetings. Muller told Gonzalez that his mother was in poor health, that this would probably be her last Christmas, and that he planned to visit her in St. Louis, Missouri. Muller told Gonzalez that he would return to work after New Year's Day. Gonzalez testified that he approved of this arrangement.[1] Gonzalez said that Muller did not return to work after New Year's Day, and he learned two weeks later that Muller had been arrested in St. Louis.

Jeff Muller testified that his mother called him on December 23, to tell him that his brother Patrick had come to St. Louis for a surprise holiday visit. Jeff said that Patrick had expressed his intention to return to Austin, and that his bags were packed when he was arrested on December 29. Jeff believed that Patrick would abide by any bond conditions.

---

[1] We infer from the testimony of the other witnesses that Muller was already in St. Louis at the time Gonzalez spoke to him.

Another brother, Joseph Muller, testified that Patrick's checking account was overdrawn, but he had $6000 in a money market account and $18,000 in a retirement account. He said that Patrick's Austin residence had a value of $152,000, with a mortgage of $116,000 and payments of $1275 per month. Patrick also has a pickup truck of unknown value. Joseph testified that Patrick's wife had sold most of their personal property and moved to Arizona. His daughter, step-daughter, and step-granddaughter, who is one of the complainants, live in Texas.

Muller argues that the facts before us are similar to those in *Ex parte Cooper*, No. 03-03-00085-CR, 2003 Tex. App. LEXIS 7440 (Tex. App.—Austin Aug. 29, 2003, no pet.). Cooper was accused of sexually assaulting his two granddaughters, who were nine and thirteen years old at the time of the alleged offenses. The record showed that Cooper was disabled, walked with a cane, and had difficulty traveling. He lived at home with his wife. Their children and grandchildren also lived in Texas. Cooper's residence was worth $115,000, with a $91,000 mortgage. The Coopers' total monthly income was just over $3000, and their monthly expenses were only a few dollars less than that. We ordered Cooper's bail reduced from $150,000 to $75,000.

There are similarities between Cooper's case and Muller's, but there are also significant differences. The crimes of which Muller is accused are more serious in that the victims are younger: four years old rather than nine and thirteen. Unlike Cooper, Muller is able-bodied and obviously able to travel. Muller has fewer ties to Texas: most of his family lives in Missouri and his wife has moved to Arizona, although his daughter and step-daughter remain in Texas. Muller's wife has apparently sold much of their furniture, and it is unclear whether Muller would be able to

4

return to his job upon release.  Muller has a larger equity in his residence than did Cooper, and he has cash assets that Cooper was not shown to have.

Considering the record evidence in the light most favorable to the district court's ruling, and measuring the court's ruling against the criteria informing the setting of pretrial bail, we conclude that the court did not abuse its discretion by setting Muller's bail at $250,000.

The district court's order is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   August 18, 2011

Do Not Publish