**Ex parte Stanley Weldon WILLIAMS.**

**No. 68201.**

Court of Criminal Appeals of Texas,
Panel No. 2.

July 22, 1981.

Hugh Lowe, Austin, for appellant.

Ronald Earle, Dist. Atty. and Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, CLINTON and TEAGUE, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from certain rulings made by a district court judge after hearing a postindictment but pretrial petition for writ of habeas corpus that sought discharge from what was alleged to be illegal confinement and restraint by the Sheriff of Travis County "by virtue of an unreasonably high bond." We first sketch a factual background to the issues appellant would have us consider.

Learning from a telephone conversation with his wife that Travis County deputy sheriffs had executed a search warrant for his residence and seized a sizeable amount of photographic equipment, photographs, videotapes during the evening of June 4, 1981, appellant returned from Corpus Christi during the following early morning hours and made arrangements to surrender to a deputy sheriff on what he understood was a charge of child pornography. He was taken before a magistrate on what turned out to be a complaint charging sexual abuse of a child; informed that bail was set at $50,000 and that release on personal bond would not be considered because of the likelihood that additional charges were in the offing, appellant submitted to incarceration.

The following Monday, June 8, the same magistrate reduced bail to $10,000 and al-

lowed release on a personal bond. In the evening, however, one of the investigating deputies called on appellant and produced a second warrant for an additional charge, setting bail on it at $50,000. Surrender on that one was deferred until the following afternoon, and appellant presented himself with packed belongings for a long tenure in jail "because I had a feeling I was going to have to stay." The charge this time was rape of a child, and bail was set on the complaint at $50,000. But during the afternoon of what is now June 9, a different magistrate reduced bail to $15,000 and approved a personal bond in that amount.

Appellant was not released, however, since in the meantime the first complaint of sexual abuse of a child was converted into an indictment and returned at about 3:21 p.m. in District Court Number 63,175. In the upper right hand corner in the space for amount of bond someone typed in $100,000. The record does not show by what authority that amount appears on the face of the indictment. In his petition for writ of habeas corpus appellant alleges, "The order setting the bond has not been located," nor, we add, has one made its way into the record before us. In the event, apparently the Travis County Sheriff honored whatever paper was thought to require a $100,000 bond, rather than the earlier magistrate's order that effectuated appellant's June 8 release on $10,000 personal bond.[1]

The following day, June 10, attorney for appellant filed the petition for habeas corpus relief from the "unreasonably high bond" in Cause Number 63,175, and the habeas judge ordered a hearing for June 12. In the interim, however, the grand jury returned an indictment in the rape of a child case, showing amount of bond at $100,000, that became Cause Number 63,250 in the district court. By agreement and approval the petition was orally amended to embrace the latter cause as well.

During the course of the hearing the parties entered into certain stipulations, the State presented one of the Sheriff's deputies who had been investigating the matters and who had sworn to the affidavit for, and assisted in executing, the search warrant and through whom the State offered the two indictments, his affidavit, the warrant and its return and, though we have not viewed it, a video cassette depicting appellant in the acts that gave rise to the charge and indictment against him; the appellant offered the personal bond papers we have alluded to and himself testified to personal biographical and financial information germane to the usual issues before a court or magistrate undertaking to apply rules for fixing amount of bail, delineated in Article 17.15, V.A.C.C.P. After hearing argument, the judge of the habeas court ruled in the pertinent part:

"The bond in each case will be reduced to $75,000 bond. A personal bond will be denied. I think that's in conformity with the seriousness of the offense and also in conformity with the ability of the defendant to make bond. * * * "

The court did not touch on the amount of bail vis-a-vis its giving "reasonable assurance that the undertaking will be complied with," and we may surmise that its requirements were thought not to make the amount of bail "an instrument of oppression." See Article 17.15, rules 1 and 2.

Appellant presents two grounds of error: First, he asserts error "in revoking the . . . personal bond in each case without a showing of good cause," drawing that, of course, from the language of Article 17.031(a), V.A.C.C.P.;[2] second, he contends that the trial court erred in setting bail at "an excessively

---

1. That release was on the recommendation of the director of the Travis County personal bond office which included a supervisory condition that appellant report to the personal bond office each Tuesday at 6:00 p. m.

2. In its entirety, subsection (a) reads:
   "A magistrate may, upon the setting of a bond, release the defendant on his personal bond, in which case the bond *may be transferred* to any court wherein the case may later be heard, and *subsequent courts may not revoke the personal bond except for good cause shown.*"
   (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

high level." For its part, the State suggests that appellant's construction of Article 17.031 "would effectively repeal Article 17.21 and 23.12, V.A.C.C.P.," and argues that they are "in pari materia" and can and should be harmonized; as to the amounts fixed by the habeas court, the State points to circumstances, especially the acts of appellant with minor children recorded on the video cassette, which it sees as justifying the ruling of the court.

■ *Ex parte Johnston*, 533 S.W.2d 349, 351 (Tex.Cr.App.1976) teaches that with enactment of Article 17.09, V.A.C.C.P., "The return of the indictment no longer *automatically* requires a new setting of bail and new posting of bond." See also *Hokr v. State*, 545 S.W.2d 463, 465 (Tex.Cr.App. 1977). Similarly, since "bail" includes the security given by an accused in the form of a personal bond, Article 17.01, V.A.C.C.P., the provisions of Article 17.031(a), supra, coupled with Article 17.09, § 2,[3] supra, dictate that a valid personal bond posted after complaint charging a penal offense survives an indictment alleging the same offense unless one of the "subsequent courts" *revokes* the personal bond "for good cause shown," Article 17.031(a), supra, *orders* the

accused to be rearrested and requires him to give another bond, Article 17.09, § 3, supra. In the case of a bail bond *Ex parte Coker*, 167 Tex.Cr.R. 208, 319 S.W.2d 120 (1959) is dispositive of the proposition that an accused is entitled to remain at liberty under the bond entered into before the magistrate— "[i]n the absence of an order for [his] arrest..."—and has been so regarded: *Surety Insurance Company v. State*, 500 S.W.2d 119, 121 (Tex.Cr.App. 1973) and *Villasana v. State*, 411 S.W.2d 736, 738 (Tex.Cr.App.1967). Finding no reason why the "*Coker*" rule is not likewise applicable to an extant personal bond,[4] accordingly, we hold that in the absence of an order revoking an otherwise valid personal bond taken for release of one charged by complaint and ordering the rearrest of the accused after return of an indictment, in twin compliance with Article 17.031(a) and Article 17.09, § 3, supra, the accused is entitled to remain at liberty under the bond entered into before the magistrate.

The question remains, however, whether appellant has shown the trial court in the case at bar erred under our holding. We conclude that he has not.

**3.** "Sec. 2. When a defendant has once given bail for his appearance in answer to a criminal charge, he shall not be required to give another bond in the course of the same criminal action except as herein provided."

**4.** As for the State's contention that a literal reading of Article 17.031 "effectively will repeal" Articles 17.21 and 23.12, V.A.C.C.P.—both, according to the State, requiring the court wherein the indictment is returned to fix bail—we observe that neither the twenty one year old *Coker* nor its progeny have been perceived as doing that. Beyond that, Article 17.21 is derived from Old Code Article 280, Oldham & White, Digest of the General Statute Laws of Texas (1859) 602—"In cases of felony, the Sheriff cannot, during the term of the Court, take the bail, but must bring the accused before the Court, that he may enter into recognizance."—and it appears under the subheading then provided and in the same context that has been retained throughout every code of criminal procedure adopted by the Legislature, including the present one, of "2. Surrender of the Principal by his Bail." Omission of the subheading format in the current code has obscured this consistent historical placement of

the provision so that the limited effect of its true meaning has been overlooked, starting probably with *Laird v. State*, 79 Tex.Cr.R. 129, 184 S.W. 810 (1916). Nevertheless, giving Article 17.21 a general effect and reconciling it with Articles 17.031 and 17.09, we construe it to apply only after the court has, for some reason stated in Article 17.09, § 3, ordered the rearrest of the accused in order to require him to give another bond. The root of Article 23.12 is Old Code Article 424, Oldham & White, op. cit. supra, at 619. Its obvious purpose was to serve the convenience of all affected parties by providing that at the end of term of court the judge, who generally was moving on to hold court in another county of his district, would "leave word" as to the amount of bail fixed by him to be posted by those accused who though indicted had not yet been arrested during the term of court; there was then, and still now, no need to issue a capias "for a defendant in custody or under bond," Articles 23.03(a), supra, unless, of course, pursuant to Articles 17.-031(a) and 17.09, § 3 the court intends to revoke the personal bond and require the accused to give another bond.

True it is that the record does not reveal the source of the indication on the indictments that bond is to be in the amount of $100,000. Though it appears from the record that the figures had been typed in the space provided before the grand jury foreman signed each indictment, we find no authority whatsoever for the grand jury or the district attorney attending it to fix the amount of bond to be given by the indictee. Compare Chapter 20, V.A. C.C.P., and see especially the contemplation of Article 20.22 that what is entered in the minutes of the court with respect to presentment of an indictment depends on whether the accused is "under bond."

Still, though we cannot know from the record how it came about that the amount of bond was set at $100,000, the petition for writ of habeas corpus seems to assume there was an "order setting the bond," but it "has not been located," and the gist of the complaint is that the amount of bond is "unreasonably high." Moreover, during the course of the habeas hearing counsel for appellant offered no evidence on the matter, the burden of his proof going to the prior reductions by the magistrates and the reliability and financial ability of appellant. Indeed, in summing up before the habeas court, counsel urged:

> "It's evident from the testimony that we've got that he is as good a bond risk as there can be. We would ask, first of all, that the bonds that were reduced by the magistrates in the amounts of ten and $15,000 each and granted as personal bond, that those—the Court would indicate that—I started to say reinstate it, but I think *those are now void.* That the Court duplicate that and grant a personal bond in whatever reasonable sum the Court would require.
>
> Failing that, if the Court requires something other than a personal bond, that the Court set a bond commensurate with the amount that Mr. Williams has testified he can make. * * * "

The Court has held in similar circumstances that reversible error is not demonstrated because, "It is not shown by positive evidence that the court did not fix the amount of bail," and a conclusion "of a negative character" will not suffice. *Wiseman v. State*, 70 Tex.Cr.R. 477, 156 S.W. 683 (1913); cf. *Turpin v. State*, 86 Tex.Cr.R. 96, 215 S.W. 455 (1919). What follows is a sort of presumption of regularity, as the Court settled in *Wooten v. State*, 109 Tex.Cr.R. 325, 4 S.W.2d 563 (1928) and reaffirmed in *Punchard v. State*, 128 Tex.Cr.R. 530, 82 S.W.2d 675 (1935). The first ground of error is overruled.

However, we find merit in the second ground of error that the amount of bail set by the habeas court is "an excessively high level." In addition to everything else pointed out *ante* about appellant's cooperation with one of the investigating officers in surrendering himself twice, the reduction in bail allowed by two different magistrates and the like, we are impressed that appellant has no prior criminal record, is married, has been regularly gainfully employed, is and has been nearly all his life (he is 31) a resident of Travis County, as are many of his close kin, and expressed a willingness to comply with whatever reasonable conditions attending his release on bail the court might impose in light of the nature of the offenses with which he stands charged. Under all the facts and circumstances shown in the record, we are satisfied that appellant has shown his entitlement to the relief we are about to grant. *Ex parte Gentry*, 615 S.W.2d 228 (Tex.Cr.App.1981); *Ex parte Vance*, 608 S.W.2d 681 (Tex.Cr.App.1980); *Ex parte Dueitt*, 529 S.W.2d 531 (Tex.Cr. App.1975).

The prayer for reduction in the amount of bail is granted; the amount of bail in each cause is fixed at $15,000; appellant is ordered released on the security of a bail bond in each cause in the amount fixed.

It is so ordered.