# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00037-CR

## Ex parte Andy Jonas Bell

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 05622A, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Andy Jonas Bell is confined while awaiting trial on charges of the third-degree felony offense of injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(3), (f) (West Supp. 2008). Bond was originally set at $300,000. Bell filed an application for writ of habeas corpus seeking a reduction in the bond amount. Following an evidentiary hearing in which Bell's counsel requested that bond be reduced to $10,000, the district court instead reduced Bell's bond to $100,000. In a single issue on appeal, Bell asserts that the bond amount remains excessively high. We will affirm the district court's order.

## Standard and scope of review

The setting of bail is committed to the sound discretion of the trial court, but the exercise of that discretion is governed by the constitution and by statute. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005). In setting bail, a balance must be struck between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial. *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd). Both the federal and

state constitutions prohibit excessive bail. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. Bail is excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. In addition to the constitutional prohibition against excessive bail, the Texas Legislature has imposed the following statutory requirements:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In setting the amount of bail, the trial court may also give consideration to such factors as: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981)); *see also Ex parte Williams*, 619 S.W.2d 180, 183 (Tex. Crim. App. 1981) (reducing amount of bail when evidence showed

2

applicant "has no prior criminal record, is married, has been regularly gainfully employed, is and has been nearly all his life . . . a resident of Travis County, as are many of his close kin, and expressed a willingness to comply with whatever reasonable conditions attending his release on bail the court might impose in light of the nature of the offenses with which he stands charged."); *Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981) (reducing bail amount when evidence showed that applicant had incentive to remain in area because of her continuing efforts to regain and retain custody of her four minor children); *Ex parte Parish*, 598 S.W.2d 872, 873 (Tex. Crim. App. 1980) (reducing bail amount when evidence showed, among other things, applicant's "strong and longstanding ties to the community," including that applicant and his wife had "been married seven years and have lived in the same house, upon which they make mortgage payments, for six years"; that applicant's parents and mother-in-law lived in the Houston area; and that applicant and his wife had a five-year-old son attending school in Houston); *Ex parte Keller*, 595 S.W.2d 531, 533 (Tex. Crim. App. 1980) (reducing bail amount when evidence showed that applicant "had lived in Houston all her life"; had two teenage daughters; was employed; "and most importantly, that she successfully served a five year probated sentence without any suggestion of ever failing to report as directed, an experience that is entitled to weight as regards the likelihood of her reporting to court as required").

We review the trial court's ruling on a request to reduce bail under an abuse of discretion standard. *See Rubac*, 611 S.W.2d at 850; *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (per curiam). As such, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Clemons*, 220 S.W.3d at 178.

3

In a habeas case, the writ applicant bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). The burden of proof is upon an applicant who claims bail is excessive, *see Rubac*, 611 S.W.2d at 849; *Milner v. State*, 263 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2006, no pet.), and we will not reduce the trial court's bail amount unless the applicant has satisfied this burden. *See Gentry*, 615 S.W.2d at 231 (reducing bail amount after reviewing court was "completely satisfied that petitioner discharged her burden of showing her entitlement" to bail reduction); *Ex parte Welch*, 729 S.W.2d 306, 310 (Tex. App.—Dallas 1987, no pet.) (refusing to reduce bail amount when reviewing court found, after considering "all of the evidence and factors relevant to determining the amount of bond," that "applicant has failed to satisfy his burden of showing that the trial court abused its discretion in refusing to lower applicant's bond"). With these considerations in mind, we proceed to review the evidence in this case in light of the above factors.

**Statutory factors**

### *Sufficient bail to assure appearance but not oppress*

The first two statutory factors are interrelated. The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear as required. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). However, while bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument

4

of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. 1980). This occurs when the

trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated"

pending trial or appeal. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987,

no pet.) (per curiam). In *Harris*, for example, after the defendant had been convicted of the offense

of driving while intoxicated, the trial court set bail at $50,000. In refusing to reduce the bail amount,

the trial court stated,

> I think because of his bad record, I just wouldn't feel right in lowering the bond any.
> I'd hate to put that upon the citizens of Travis County. Maybe the Court of Appeals
> will, but at least that won't be on my back.

> I just feel a duty to the community to protect the community. If he'd get out and kill
> someone, I'd never get over it. I'd rather see him in jail than to see someone's life
> taken, so I'm going to deny the writ and let you go on up to the Court of Appeals and
> see what they do about it. I just wouldn't feel right with this horrible record.

*Id*. On appeal, this Court found that the above comment demonstrated that the district court abused

its discretion in setting the amount of bail:

> It is clear that the district court's refusal to reduce bail was not based on a
> determination that $50,000 bail is necessary to assure appellant's presence should his
> conviction be affirmed, nor was it based on a finding that appellant had not made an
> adequate effort to make bail in the amount set. . . . Rather, the district court elected
> to set bail, but in an amount calculated to be beyond appellant's means and to assure
> appellant's continued incarceration. The district court, by so doing, used bail as an
> instrument of oppression in violation of the constitution and statutes of this State.

*Id*.

Here, by contrast, the record demonstrates that the district court contemplated that

Bell could actually make bail. In reducing the amount from $300,000 to $100,000, the district court

5

explained, "I am going to reduce the bond to $100,000 conditioned on no contact with any child under the age of 18 years old. That would include the victim, and also conditioned on the defendant remaining in Bell County." Nothing in this statement or anything else in the record suggests that the district court, in reducing the amount of bail to $100,000, was attempting to assure Bell's continued incarceration. *See Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.); *Ex parte Milburn*, 8 S.W.3d 422, 426 (Tex. App.—Amarillo 1999, no pet.).

### Nature of offense

The third factor under article 17.15 is the nature of the offense for which the defendant is charged and the circumstances under which it was committed. Bell is being charged with the offense of injury to a child. The complaint alleges that on or about April 24, 2008, Bell "did then and there intentionally and knowingly cause bodily injury to [M.B.], a child younger than 15 years of age, by striking her about the body and buttocks with his hand and striking her about the body and buttocks with a belt." During the evidentiary hearing, the district court did not allow much testimony about the circumstances under which the offense was allegedly committed.[1] However, Bell testified that, as a result of this case, Child Protective Services (CPS) became involved and took M.B. and Bell's two other children away from him.[2] Additionally, on cross-examination, the State was able to elicit testimony about the fact that M.B., who was five years old at the time of the alleged

[1] When the State attempted to elicit testimony about the seriousness of M.B.'s injuries, Bell would often object to "getting into the facts of the case." The district court sustained the objections.

[2] Bell testified that M.B. is his only biological child, from a prior relationship. The other two children are his wife's biological children from a prior relationship.

offense, was taken to a hospital in Killeen and later "life-flighted" to a hospital in San Antonio for treatment of her injuries. The State also elicited testimony from the officer who investigated the offense, Sergeant Reese Davis of the Killeen Police Department, that he believed the injuries M.B. sustained in this case were serious and that, at the time of the hearing—approximately nine months after the incident—M.B. was still receiving treatment for her injuries. Thus, the record reflects that this was a serious offense.

In claiming that bail in this case was excessive, Bell cites to three cases in which bail was set at less than $100,000 for felony offenses that Bell considers "more serious" than the offense for which he was charged. *See Ex parte Garcia*, 100 S.W.3d 243, 247 (Tex. App.—San Antonio 2001, no pet.) (affirming trial court's setting of bail at $50,000 for second-degree felony offense of indecency with a child); *Ex parte Sabur-Smith*, 73 S.W.3d 436, 441 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (reducing bail amount from $150,000 to $30,000 for second-degree felony offense of sexual assault); *Ex parte Parker*, 26 S.W.3d 711, 713 (Tex. App.—Waco 2000, no pet.) (affirming trial court's setting of bail at $50,000 for first-degree felony offense of aggravated sexual assault). However, as Bell acknowledges, "'case law is of relatively little value in addressing the ultimate question of the appropriate amount of bail in a particular case' because appellate decisions on bail matters are often brief and avoid extended discussions, and because the 'cases are so individualized that generalization from results reached in others is difficult.'" *Beard*, 92 S.W.3d at 571 (citing 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 16.51

(2d ed. 2001)). Because of significant factual differences between the above cases and the case before us, we do not find the cited cases to be persuasive here.[3]

However, that is not to say that case law is unhelpful in reviewing the amount of bail set in a particular case. In fact, courts sometimes compare bail amounts in cases involving offenses of the same degree. This is because such offenses carry the same punishment range, which is a proper consideration in determining the nature of the offense. *See Charlesworth*, 600 S.W.2d at 317; *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977); *Maldonado*, 999 S.W.2d at 95. As alleged, the offense in this case is a third-degree felony. *See* Tex. Penal Code Ann. § 22.04(a)(3), (f). The punishment for a third-degree felony is imprisonment for any term of not more than ten years or less than two years and, in addition, a fine not to exceed $10,000. *Id*. § 12.34 (West 2003). Texas courts have approved bail amounts between $25,000 and $150,000 for third-degree felonies. *See, e.g.*, *Ex parte Durst*, 148 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (reducing bail to $150,000 for each of three third-degree felony charges); *Ex parte McCullough*, 993 S.W.2d 836, 839 (Tex. App.—Waco 1999, no pet.) (affirming

---

[3] For example, in *Ex parte Garcia*, the evidence showed that the defendant could stay with his adoptive father and brother if he was released on bail, that he had a history of depression requiring medication and hospitalization, and that he had been subjected to physical attacks while in jail. 100 S.W.3d 243, 246 (Tex. App.—San Antonio 2001, no pet.). In *Ex parte Sabur-Smith*, a sexual-assault case involving an adult complainant, there was disputed evidence about whether the complainant had consented to the alleged offense, and there was also evidence presented that the defendant had lived in the community for three years and had "extensive family ties to the area." 73 S.W.3d 436, 440-41 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In *Ex parte Parker*, the appeals court affirmed the trial court's reduction of bail in an amount less than the defendant requested because the evidence showed that the defendant had attempted to flee to Louisiana when he became aware of the allegations against him, and that the defendant had a juvenile history, as well as family and job prospects, in that state. 26 S.W.3d 711, 712-13 (Tex. App.—Waco 2000, no pet.).

trial court's decision to set total bail amount of $25,000 for three counts of injury to elderly person); *Smithwick v. State*, 880 S.W.2d 510, 512 (Tex. App.—San Antonio 1994, no pet.) (reducing bail amount from $250,000 to $50,000 for offense of injury to child).[4] The bail amount set by the district court in this case, $100,000, is comparable to the bails approved in these similar cases.

### *Ability to make bail*

The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980); *Maldonado*, 999 S.W.2d at 96. This is true even if the accused is determined to be indigent. *Charlesworth*, 600 S.W.2d at 317. If the ability to make bail in a specified amount controlled, the role of the trial court in setting bail would be unnecessary and the accused would be able to set his own bail. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd).

---

[4] *See also Ex parte Lopes*, No. 05-04-00216-CR, 2004 Tex. App. LEXIS 3642, at *10 (Tex. App.—Dallas Apr. 26, 2004, no pet.) (not designated for publication) (affirming trial court's decision to set bail at $100,000 for third-degree felony offense of stalking); *Ex parte Cosby*, Nos. 07-02-0482-CR & 07-02-0483-CR, 2003 Tex. App. LEXIS 7191, at *4 (Tex. App.—Amarillo Aug. 21, 2003, no pet.) (not designated for publication) (affirming trial court's decision to set total bail at $100,000 for seventeen counts of third-degree felony offense of possession of child pornography); *Ex parte Owens*, No. 03-98-00315-CR, 1998 Tex. App. LEXIS 7737, at *4 (Tex. App.—Austin Dec. 17, 1998, no pet.) (not designated for publication) (affirming trial court's decision to set bail at $75,000 for offense of injury to child); *Bunn v. State*, No. 06-98-00222-CR, 1998 Tex. App. LEXIS 7017, at *1, *8 (Tex. App.—Texarkana Nov. 10, 1998, no pet.) (not designated for publication) (affirming trial court's decision to set bail at $100,000 for each of two counts of injury to child); *Morales v. State*, No. 09-96-221-CR, 1996 Tex. App. LEXIS 4281, at *1-2 (Tex. App.—Beaumont Sept. 25, 1996, no pet.) (not designated for publication) (affirming trial court's refusal to reduce $100,000 bond for offense of injury to child).

This factor will not favor bail reduction when the defendant makes vague references to inability to make bail without detailing his specific assets and financial resources. *Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Additionally, when the defendant has sought a reduction in the bail amount, and the trial court has reduced the amount, the defendant must usually show that he has made an effort to furnish bail in the reduced amount. *See Ex parte Stembridge*, 472 S.W.2d 155, 155 (Tex. Crim. App. 1971); *Smith v. State*, 161 S.W.3d 191, 193 (Tex. App.—Texarkana 2005, no pet.); *Ex parte Holden*, 774 S.W.2d 957, 957 (Tex. App.—Houston 1989, no pet.); *see also Ex parte McDaniel*, 258 S.W. 1057, 1058 (Tex. Crim. App. 1924) (denying request to reduce bail when there was "no evidence of any effort on the part of appellant to procure bondsmen, and no showing before the trial court that he was without friends, neighbors or kinsmen who were willing to go upon such bond as was fixed by the trial judge"); *Clemons*, 220 S.W.3d at 179 (affirming trial court's bail amount when, although defendant "showed that he could not afford bail as set in these cases, he did not provide any evidence showing that he had made any efforts to secure a bond himself. His testimony showed that he had not attempted to find out if any friends or family members were willing or able to help him secure a bond."); *but see Ex parte Skinner*, 496 S.W.2d 633, 634 (Tex. Crim. App. 1973) (holding that, when record already shows that applicant would be unable to make reduced bail amount, applicant does not have to return to trial court and make "new showing" that he cannot afford bail amount); *Milner*, 263 S.W.3d at 149-50 ("If both the defendant and his family indicate a financial inability to procure a surety bond, the court will not require him 'to do a useless thing.'") (quoting *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)).

In this case, when asked how much money he had available to pay on bond, Bell testified, "Approximately 2,000." On cross-examination, Bell testified that he owns no property in the State of Texas or any vehicles. Bell also testified that he does not have any savings account. He does, however, have a checking account. When asked how much money was in his checking account, Bell testified, "I'm not aware at this time. I was paid, but I haven't been able to check my account. It should be around 700 right now." Bell further acknowledged that he is still receiving pay from the army and that he gets paid twice a month in the approximate amount of "700 and something" per paycheck "with all my allotments." According to Bell, other than his checking account, he has no other source of funds and no stocks or bonds. Bell is married, but his wife is currently in jail.

Bell provided no testimony about his monthly expenses. However, in a financial questionnaire filed with the district court for the purpose of determining if Bell was entitled to court-appointed counsel, Bell indicated that he pays child support in the amount of $450.00 per month. Bell also provided no testimony about whether his mother (the person with whom M.B. currently resides) or other members of his or his wife's family would be able or willing to help secure the bail amount. Further, Bell has presented no evidence that, after the district court reduced the bail amount from $300,000 to $100,000, he has made an effort, either alone or with the help of others, to furnish bail in the reduced amount.

### Future safety of the victim and the community

The final statutory factor examines the safety of the victim and the community if the defendant were to be released on bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). The victim

11

in this case is Bell's five-year-old daughter, M.B. There is evidence suggesting that this is not the first time M.B. has been injured. Bell testified that he and his wife, who had lived together in Tennessee for a period of time, were previously investigated by Tennessee CPS for allegations of physical abuse to M.B., and his wife is currently in jail as a result of allegations that she injured M.B. Bell also testified that Texas CPS has taken his three children away from him based on the current allegations. According to Bell, M.B. is currently living with Bell's mother in Virginia, and his two other children are "in Copperas Cove with a foster parent." Thus, the victim and the other children have been at least temporarily removed from Bell's custody, making it less likely that he could pose a threat to their safety. On the other hand, as the State argued during the hearing, if Bell were to flee to Virginia while he was out on bail, he could obtain access to his daughter through his mother. As for the safety of the community, Bell testified that he has no criminal record other than this case, and he has never tested positive for drugs.

**Other factors**

Bell, who is twenty-seven years old, provided some evidence about his work record. Bell testified that he has been serving in the military for eight years and has been in the army for one year. His rank is "E4 specialist." Bell testified that, while he has been in the army, he has not had any kind of legal action taken against him.

As for family, community, and other ties to the area, Bell testified that his main tie to Texas is the army. Bell currently lives "on post," and he testified that he moved there around May of 2008. Prior to that, Bell testified, he was living in a hotel in Killeen "off of Hood Road." Bell testified that, if the district court were to reduce bond in an amount he could afford, he intended

12

to return to post. Bell also testified that he is originally from Maryland. Bell's father lives in Tennessee. His mother lives in Virginia, along with Bell's biological daughter. Bell's other two children, as explained above, currently live in Copperas Cove with foster parents. Bell's wife is currently in jail. Bell also testified that he has no other family members who reside in Bell County. He does "have an aunt through my father" that lives in Dallas. However, other than this aunt, Bell has no family in Texas. Also, Bell presented no evidence as to how long he has resided in Bell County specifically or in Texas generally.

Officer Davis, the investigating officer, testified that Bell "has no ties specifically to this area" other than his job in the military. Davis also testified that, during his over 22 years in law enforcement, he has worked with army defendants on "many" occasions, including army defendants who were charged with this type of crime. In Davis's experience, this type of crime can affect the careers of army defendants. According to Davis, "It can ultimately lead to their discharge from the military." In Davis's view, if that were to happen in this case, it would remove Bell's primary tie to the State of Texas.[5]

There is also some evidence in the record about Bell's compliance with CPS while the current investigation was ongoing. Bell testified that he has appeared in court "approximately four to five" times since CPS became involved in the case. According to Bell, prior to being arrested, he was undergoing CPS services, and he had "accomplished everything" that CPS had asked of him.

---

[5] It does not appear that, at the time of the hearing, Bell had been discharged from the army. When asked if he was "still in the army as far as you know," Bell testified, "Yes, sir."

As for the remaining factors, they are not implicated in this case. Bell testified that he has no prior criminal history, and there is nothing in the record concerning Bell's conformity with previous bond conditions or the existence of other outstanding bonds. There is also nothing in the record about any aggravating circumstances alleged to have been involved in the charged offense.[6]

**Summary**

As our discussion of the above factors suggests, there is evidence in the record weighing both for and against the district court's decision to set bail at $100,000. On the one hand, Bell presented evidence that, because his children are not in his custody and he has no criminal history, he poses little threat to the safety of the victim, his other children, or the community. Bell also presented evidence of a fairly stable work record—eight years in the military with no legal action taken against him. Further, Bell presented evidence that he has already appeared in Bell County courts on four or five occasions in compliance with CPS requirements. Also, according to Officer Davis, the criminal investigation into the allegations against Bell began in April 2008. Bell was not arrested until December. Thus, as Bell argued during the hearing, if he had wanted to leave the state to escape prosecution, he had plenty of time to do so prior to his arrest. Additionally, Bell presented evidence that he, acting alone, would be unable to pay the bond amount. He testified that he has no savings account, stocks, bonds, or other source of funds, and only approximately $700 in his checking account. This is equivalent to the approximate amount of money he receives from

---

[6] The State asserts in its brief that "the apparent violent nature of the attack" is an aggravating circumstance. However, we cannot verify the alleged "violent nature of the attack" from the record before us, because the district court allowed only limited evidence at the hearing about the underlying facts of the case.

14

the army each two-week pay period. According to Bell, he has only "approximately 2000" dollars available to pay bond, well below the $100,000 bond amount set by the district court.

On the other hand, Bell presented no evidence that he has made an effort to pay bond in the reduced amount by securing the help of others, such as his parents or a bail bondsman.[7] And, even assuming Bell could not obtain financial assistance from others, again, the ability to pay is not controlling—if it was, the accused could set his own bail. *See Hunt*, 138 S.W.3d at 506. Bell also presented no evidence that the district court set the bond amount at $100,000 for the express purpose of assuring his continued incarceration.

Additionally, Bell was charged with the third-degree felony offense of injury to a child, specifically his five-year-old daughter. The record reflects that the child's injuries were severe enough that she had to be "life-flighted" from one hospital to another, and that she was still undergoing treatment for her injuries almost nine months after she sustained them. The offense in this case carries a possible punishment of between two to ten years' imprisonment, and the bond amount set by the district court was within the $25,000 to $150,000 range Texas courts have historically approved for such felonies.

Moreover, there was considerable evidence presented that Bell has few ties to the area. Bell testified that he is originally from Maryland. He owns no property in Texas. Prior to

---

[7] In bail-reduction hearings, defendants sometimes present evidence of what amount local bail bondsmen would be willing to pay and what percentage or premium bondsmen typically charge for their services. *See, e.g.*, *Ex parte Walton*, 583 S.W.2d 786, 786 (Tex. Crim. App. 1979); *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (per curiam); *Ex parte Davis*, 147 S.W.3d 546, 550 (Tex. App.—Waco 2004, no pet.); *Ex parte Cuevas*, 130 S.W.3d 148, 150 (Tex. App.—El Paso 2003, no pet.); *Ex parte Hulin*, 31 S.W.3d 754, 758 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Bell introduced no such evidence.

15

living on post, Bell was living in a hotel in Killeen. Bell also testified that he lived for a period of time in Tennessee, and his father currently lives in that state. Bell's mother and his biological daughter live in Virginia. His other two children are now living with foster parents. His wife is in jail. He has no family in Texas other than an aunt in Dallas. By Bell's own admission, his main tie to Texas is his job with the army, but, as Officer Davis testified, the crime of which Bell is charged could ultimately lead to his discharge from the military. If that were to happen, Davis testified, Bell's primary tie to Texas would be gone. Also, Bell's prior court appearances happened before his arrest. The district court could have found that, now that Bell had been arrested and was facing felony charges and possible prison time, his lack of ties to Texas and his family ties in other states made him a flight risk. *See Hulin*, 31 S.W.3d at 761-62 (explaining that family ties and residency are factors to consider in determining if defendant is a flight risk).

On the above record, we find that Bell failed to satisfy his burden to prove that bail in this case was excessive, i.e., that it was "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. Accordingly, we cannot conclude that the district court abused its discretion in reducing the amount of bond from $300,000 to $100,000. We overrule Bell's sole issue.

We affirm the order of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   May 12, 2009

Do Not Publish